# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00960-SCT

*DREXEL BROWN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2009 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: BRENDA JACKSON PATTERSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/26/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Drexel Brown was convicted by a jury for the crime of sale of cocaine in the Circuit

Court for the Second Judicial District of Jones County, Judge Billy Joe Landrum presiding,

and sentenced as a drug recidivist to sixty years, with fifteen years suspended, in the custody

of the Mississippi Department of Corrections. Judge Landrum subsequently denied Brown's

Motion for New Trial, and Brown perfected this appeal, alleging errors at the trial-court

level. Finding Brown's assignments of error to have no merit, we affirm the judgment of

conviction and sentence entered by the Circuit Court for the Second Judicial District of Jones County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     During a traffic stop, Anthony Jones was arrested by Officer Vince Williams for being in possession of a crack cocaine pipe.[1]  In return for dropping the possession charge, Jones agreed to work as a confidential informant with the Laurel Police Department.  Jones also was paid for his work with the department.[2]

¶3.     On November 12, 2008, Jones was contacted by the Laurel Police Department and went to the Narcotics Division to arrange a cocaine purchase from Brown.  Once Jones arrived, he was fitted with recording and audio devices, and both he and his vehicle were searched to ensure that no other narcotics or currency were present.  Officer Williams issued Jones $35 in official funds to purchase the cocaine from Brown.  Jones also was given a cellular phone to stay in contact with Officer Williams.  However, according to Jones and Officer Williams, once Jones got into his car, he placed the seat belt over the camera he was wearing, causing the screen or view to be blank for some time.  Officer Williams and Officer

[1]It is unclear from the record as to when this traffic stop of Jones occurred, in relation to the subsequent contact of Jones by the Laurel Police Department Narcotics Division concerning Jones's participation in the drug buy from Brown.

[2]Jones was paid one hundred dollars per "buy."  Officer Williams testified that in his course of work as a narcotics officer, this is the way "buy" operations, or drug purchases, are generally conducted.  *See* ***Williams v. State***, 463 So. 2d 1064, 1069 (Miss. 1985) ("It is generally recognized that the prosecuting authorities may use informants and pay them, in that it is often necessary for the government to use artifices and stratagem [sic] to ferret out criminal activities.").

Ted Ducksworth followed three to four blocks behind Jones at all times and stayed about that same distance from Brown's house during the transaction. Officer Williams also testified that, en route to Brown's house, they pulled up beside Jones to tell him to turn on the cellular phone that he had been given. After the drug transaction, Jones called to inform the officers that he had the cocaine and was on his way back to the Narcotics Division office. The officers watched Jones leave the area but tried not to follow too closely at this point for fear of Jones being identified as an informant.

¶4. Upon return to the Narcotics Division office, Officer Williams removed the equipment from Jones and obtained the cocaine from him. Officer Williams also tagged as evidence the videotape of the transaction which, according to Williams, clearly showed Brown as the one selling the cocaine to Jones. Officer Williams conducted a post-buy search which revealed no contraband, narcotics, or currency on Jones or in Jones's vehicle.

¶5. Officer Williams further testified that, after he received the cocaine from Jones, he field-tested it, placed it in an evidence bag, sealed and initialed the evidence bag on the back, and secured the bag in his evidence locker. Thereafter, Lieutenant Ken Williams of the Laurel Police Department's Narcotics Division took the cocaine to the Mississippi Crime Laboratory in Meridian. Keith McMahan, a forensic scientist assigned to the Meridian Branch of the Mississippi Crime Laboratory, identified the substance delivered to the lab as less than 0.1 grams of cocaine.

¶6. Brown was tried and convicted by a jury in the Circuit Court of the Second Judicial District of Jones County for sale of cocaine. The trial court sentenced Brown to serve a term

3

of sixty years, with fifteen years suspended, and forty-five years to serve in the custody of the Mississippi Department of Corrections.[3] Brown was also assessed costs of $260.50 and ordered to reimburse Jones County for the use of a public defender in the amount of $750.00. Brown filed his Motion for New Trial, which the trial court denied. From his conviction and sentence, Brown appealed to this Court.[4]

**DISCUSSION**

¶7.    Brown presents two issues for this Court's consideration: (1) whether the evidence was sufficient to support Brown's conviction for sale of cocaine, and (2) whether the trial court erred in admitting an unauthenticated water bill. The issues are restated for the sake of today's discussion.

### I.    WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT BROWN'S CONVICTION.

¶8.    Brown argues that the evidence was insufficient to determine where Jones had obtained the cocaine, and thus, reasonable jurors could not have found beyond a reasonable doubt that Brown was guilty of the sale of cocaine. "[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for

---

[3]The trial court determined that this offense was a second, or subsequent, offense within the meaning of Mississippi Code Section 41-29-147. *See* Miss. Code Ann. § 41-29-147 (Rev. 2003).

[4]Although Brown's post-trial motion is simply titled "Motion for New Trial" wherein he argues that the "verdict of the jury is contrary to law, and the evidence," he files his Notice of Appeal stating that he appeals to this Court "from the final judgment, and the denial of the Motion for Judgment Notwithstanding the Verdict or, in the Alternative for Motion for a New Trial."

4

judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (quoting ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968)).  The essential inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. (citing ***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  This Court has stated further:

> If the facts and inferences so considered point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. ***May v. State***, 460 So. 2d 778, 781 (Miss. 1984). On the other hand, if there is substantial evidence opposed to the motion–that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense–the motion should be denied.

***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985).

¶9.    In today's case, the State's burden was to prove that Brown knowingly or intentionally sold or transferred cocaine (less than 0.1 grams), a Schedule II controlled substance, to Jones, for a sum of money.  *See* Miss. Code Ann. § 41-29-139 (Rev. 2003).  Jones testified that he had agreed to serve as an informant and that he had gone to Brown's residence on Joe Wheeler Avenue to purchase cocaine.  He testified that Brown was indeed the person from whom he had purchased the cocaine for $35 and that he had known Brown for about a year

5

and a half. Jones stated that before the sale or transfer, he had asked Brown "if there was anything going on, meaning was there any crack there for sell (sic)." He further testified that Brown had responded "yeah." This Court has stated that a person may be found guilty on the uncorroborated testimony of one witness. *Doby v. State*, 532 So. 2d 584, 591 (Miss. 1988) (citations omitted). However, in today's case, we have more than just Jones's uncorroborated testimony. Officer Williams corroborated much of Jones's testimony. Officer Williams stated that Jones had agreed to cooperate with him and work as an informant. He testified that Jones's car had been searched prior to his departure to purchase drugs and upon his return with the cocaine purchased from Brown. Officer Williams had monitored the cocaine purchase from a safe following distance, and he testified that he had received what appeared to be cocaine from Jones upon Jones's return to the Narcotics Division office. Officer Williams also watched the video recording and identified Brown from previous knowledge "as the one who is selling the cocaine" on the video. This recording was played for the jury. Furthermore, a forensic scientist with the Mississippi Crime Laboratory identified the substance delivered to him by the Narcotics Division as cocaine.

¶10. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Brown of the sale of cocaine. Any reasonable trier of fact could have found beyond a reasonable doubt that the State had proven all the elements of the crime of sale of cocaine. As such, this issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ADMITTING AN UNAUTHENTICATED WATER BILL.

6

¶11.    Over the objection of Brown's counsel, the trial court admitted in evidence a copy of a water bill from 1032 North Joe Wheeler Avenue in Laurel, showing Brown's name on the bill as of November 12, 2008.  Officer Williams testified that the bill had been obtained from the city clerk's office, and to his knowledge the bill was a record kept in the normal course of business by the City of Laurel.  Brown, however, asserts that the trial court erred in admitting the water bill solely on Officer Williams's testimony and that the document was not properly authenticated, thus rendering the document inadmissible.

¶12.    Mississippi Rule of Evidence 803 states, in pertinent part, that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian *or other qualified witness* or self-authenticated pursuant to Rule 902(11), *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness*. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Miss. R. Evid. 803(6) (emphasis added).  "Under Rule 803(6), the focus is properly placed on the time period when the documents were created, the trustworthiness of the documents, and whether their creation was in the regular course of business."  *Ferguson v. Snell*, 905 So. 2d 516, 519 (Miss. 2004).  Brown argues that Officer Williams was not acting within the course and scope of the City of Laurel Water Department's regularly conducted business, and

7

therefore, Officer Williams's testimony could not authenticate the water bill under Rule 803(6). The State, however, argues that Brown is a "qualified witness" within the meaning of Rule 803(6) and there is no evidence to "indicate lack of trustworthiness" as the exhibit was simply a copy of a utility bill for water usage from the City of Laurel to Brown for payment due. *See* Miss. R. Evid. 803(6).

¶13. Ultimately, this dispute is of no moment, and any potential error is certainly harmless. *See* **Thomas v. State**, 711 So. 2d 867, 872-73 (Miss. 1998) ("the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'"). The State had only to prove beyond a reasonable doubt that Brown knowingly or intentionally sold or transferred cocaine to Jones. The exact address of Brown's residence was unnecessary for conviction; the only inquiry was whether the sale of cocaine took place in the judicial district where the trial was held. Further, the record reveals that evidence linking Brown to the residence on North Joe Wheeler Avenue in Laurel was cumulative. Jones testified that he had purchased the cocaine from Brown at Brown's residence on Joe Wheeler Avenue. Both Jones and Officer Williams had identified Brown as the person selling the cocaine to Jones, and Jones had identified a photograph of the residence on Joe Wheeler Avenue as being the front of the house where he had purchased the cocaine from Brown. Thus, as determined by the trial court, the address where the sale of cocaine from Brown to Jones had taken place was in the Second Judicial District of Jones County. Therefore, we find that this issue likewise is without merit, as any possible error

8

undoubtedly would be harmless. *See Williams v. State*, 991 So. 2d 593, 599 (Miss. 2008) (error is harmless when insignificant or unimportant to extent that automatic reversal of conviction not required).

## CONCLUSION

¶14.   Because the evidence was legally sufficient to sustain Drexel Brown's conviction, and because no reversible error occurred during Brown's trial, the judgment of conviction for sale of cocaine and sentence as a drug recidivist imposed on Drexel Brown of sixty years, with fifteen years suspended, and forty-five  years to serve in the custody of the Mississippi Department of Corrections, is affirmed.

¶15.   **CONVICTION OF SALE OF COCAINE AND SENTENCE, AS A SECOND OR SUBSEQUENT DRUG OFFENDER, OF SIXTY (60) YEARS, WITH FIFTEEN (15) YEARS SUSPENDED, AND FORTY-FIVE (45) YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**